ORIGINAL



FILED CLERK'S OFFICE
Atlanta

DEC 23 2004

_____, Clerk
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DAREN M. KEETER, KELLY T.
KEETER; KAYLAN A. KEETER.
DAREN M. KEETER, TRUSTEE
FOR THE KAK TRUST, SOLE
MEMBER OF NEWAUKUM
VENTURES, LLC, JULIE L
KEETER, GUARDIAN OF THE
PROPERTY OF KYLAN A
KEETER, BRADLEY A KEETER,
CHERYL KEETER, STEVEN J
KEETER, JAMES P. KEETER,
HUMPTULIPS VENTURES. LLC.
SATSOP VENTURES, LLC,
CHEHALIS VENTURES, LLC, and
NEWAUKUM VENTURES, LLC,

        Plaintiffs,

        vs

KPMG LLP, JEFFREY A
EISCHEID; SIDLEY AUSTIN
BROWN & WOOD, LLP, f/k/a
BROWN & WOOD, LLP, R.J
RUBLE; DEUTSCHE BANK AG,
DEUTSCHE BANK SECURITIES
INC , d/b/a DEUTSCHE BANK
ALEX BROWN; PRESIDIO
GROWTH, LLC, PRESIDIO
ADVISORS, LLC, PRESIDIO
ADVISORY SERVICES, LLC, and
JOHN LARSON,

        Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION FILE
NO. ___1:04-CV-3759___**

W

## DEUTSCHE BANK AG AND DEUTSCHE BANK
## SECURITIES INC., d/b/a DEUTSCHE BANK
## ALEX. BROWN'S NOTICE OF REMOVAL OF
## ACTION TO FEDERAL COURT PURSUANT
## TO 9 U.S.C. § 205  and 28 USC § 1441 *et seq.*

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION:**

PLEASE TAKE NOTICE that Defendants Deutsche Bank AG and Deutsche Bank Securities Inc , d/b/a Deutsche Bank Alex Brown (collectively "Deutsche Bank" or the "Deutsche Bank Defendants") hereby remove to this Court, pursuant to 9 U S C § 205 and 28 U S.C § 1441 *et seq* , the State Court action described below. which is an action that relates to an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention")

## I.   BACKGROUND AND PROCEDURAL HISTORY

1   On or about October 11, 2004. a complaint captioned *Daren M Keeter, Kelly T Keeter, Kaylan A Keeter, Daren M Keeter, Trustee for the KAK Trust, Sole Member of Newaukum Ventures, LLC, Julie L Keeter, Guardian of the Property of Kylan A Keeter, Bradley A Keeter, Cheryl Keeter, Steven J Keeter, James P Keeter, Humptulips Ventures, LLC, Satsop Ventures, LLC, Wynoochee Ventures, LLC, Chehalis Ventures, LLC, and Newaukum Ventures, LLC versus KPMG LLP, Jeffrey A Eischeid, Sidley Austin Brown & Wood, LLP, f/k/a Brown & Wood, LLP, R J Ruble, Deutsche Bank AG, Deutsche Bank Securities Inc , d/b/a*

1

*Deutsche Bank Alex Brown, Presidio Growth, LLC, Presidio Advisors, LLC, Presidio Advisory Services, LLC, and John Larson.* Case No. 2004-CV-92313, was filed in the Superior Court of the State of Georgia for the County of Fulton ("Complaint" or "Compl ")

2    Plaintiffs served the Complaint on Deutsche Bank AG on November 23, 2004. Plaintiffs served the Complaint on Deutsche Bank Securities Inc  d/b/a Deutsche Bank Alex Brown ("DBSI") on December 8, 2004  Copies of the Summonses, the Complaint and all process, pleadings and orders that have been served on or received by Deutsche Bank in this action are attached hereto as Exhibit A, as required by 28 U.S C. § 1446(a).

3    Defendant Deutsche Bank will file promptly a copy of this Notice of Removal with the clerk of the county court where the action has been pending.

## II.    THE COMPLAINT

4    According to the Complaint,[1] Plaintiffs are members of the Keeter family who invested in a tax-advantaged strategy, known as BLIPS, and claimed capital losses as a result of the strategy on their 1999

---

[1]    Deutsche Bank does not admit any of the factual allegations in the Complaint and expressly reserves the right to contest those allegations at the appropriate time.

2

and 2000 tax returns   *See* Compl. ¶¶ 14, 22   In particular, Plaintiffs comprise three groups· (1) five limited liability companies -- Newaukum Ventures, LLC, Chehalis Ventures, LLC, Wynoochee Ventures, LLC, Humptulips Ventures, LLC and Satsop Ventures, LLC (hereinafter the "LLC Plaintiffs"), (2) five individuals who are the sole members of the LLCs – Daren M. Keeter as Trustee for the KAK Trust, Steven J Keeter, Bradley A. Keeter, James P Keeter and Daren M Keeter (hereinafter the "LLC Sole Member Plaintiffs"); and (3) four individuals who are the related family members of the LLC Sole Member Plaintiffs – Kelly T. Keeter, Kaylan A Keeter, Julie L Keeter as Guardian of the Property of Kaylan A. Keeter, and Cheryl Keeter (hereinafter the "Keeter Family Plaintiffs")   Although the Complaint's allegations are vague, Plaintiffs appear to allege that the Internal Revenue Service (the "IRS") is auditing their tax returns as a result of their participation in BLIPS   *See* Compl. ¶ 39 ("[P]laintiffs paid unnecessary fees related to BLIPS, have incurred costs and may incur additional costs in connection with the IRS audit, on account of BLIPS"). As a result, Plaintiffs now sue, claiming they were misled by their attorneys, tax advisors and investment advisors, and also by Deutsche Bank AG and

DBSI, the financial institutions that provided credit and account services to them  *See, e g , id*  ¶¶ 19, 20, 22. 31. 36

5    Plaintiffs' Complaint alleges nine claims· (1) civil conspiracy and facilitation of fraud against all Defendants; (2) fraud against all Defendants; (3) breach of fiduciary duty against all Defendants; (4) negligent misrepresentation against all Defendants, (5) negligence and gross negligence against KPMG and Jeffrey Eischeid, (6) negligence and gross negligence against Sidley Austin Brown & Wood f/k/a Brown & Wood, LLP and Ruble; and (7) unfair and deceptive practices [2]  Plaintiffs also seek punitive damages against all Defendants and expenses of litigation and attorney's fees [3]  *See id*  ¶¶ 30-81.

### III.   JURISDICTION AND VENUE

6.    This Court has jurisdiction over this lawsuit under 9 U S.C  § 203. because "[a]n action or proceeding falling under Convention shall be deemed to arise under the laws and treaties of the United States The district courts of the United States (including the courts enumerated in

---

[2]    The Complaint does not specify which Defendants are included in this claim.  *See id* ¶¶ 68-70

[3]    The Complaint does not specify which Defendants are included in this claim  *See id* ¶¶ 79-81

section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." *Id*

    7    Under 9 U.S.C. § 205, "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." *Id*

    8    Pursuant to 9 U.S.C. § 202, "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title [9 U.S.C. § 2], falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States." *Id*

5

9       Venue is proper in this district under 9 U.S.C. § 205 because this Court is the United States District Court for the district and division embracing the place where the removed action has been pending.

10      Pursuant to 9 U S C  § 205, removal is proper "at any time before the trial [of the action pending in a State court]."

11.     Each of the named Defendants that has been served with the Complaint has consented to this Notice of Removal.  The consents are being filed concurrently herewith

## IV.   GROUNDS FOR REMOVAL

### The Arbitration Agreements

12      On or about September 20, 1999, the LLC Sole Member Plaintiffs countersigned letter agreements with DBSI confirming their intention, as part of the BLIPS strategy, to "cause an entity [they] control[led] . .    (i) to borrow funds from Deutsche Bank AG, Cayman Islands Branch, and (ii) to execute transactions with or through [DBSI]." *See* Letter Agreements between DBSI and LLC Sole Member Plaintiffs, dated September 20, 1999, attached hereto as Exhibits B to F

13.     Shortly after signing these letter agreements, the LLC Sole Member Plaintiffs, on behalf of the LLC Plaintiffs, entered into written

account agreements with DBSI to open a joint brokerage account to execute

foreign currency transactions   *See* Customer's Agreements between the

LLC Plaintiffs and DBSI, dated September 23-27, 1999, attached hereto as

Exhibits G through K [4]   As the Letter Agreements between DBSI and the

LLC Sole Member Plaintiffs make clear, these transactions were a necessary

component of the BLIPS investment strategy   *See* Letter Agreements

between DBSI and LLC Sole Member Plaintiffs, dated September 20, 1999,

attached hereto as Exs. B to F.

        14   Each of the Customer's Agreements contains the same

mandatory arbitration clause at Paragraph 14 that provides, in relevant part.

> The UNDERSIGNED AGREES, and by
> carrying an Account of the Undersigned you
> agree, that except as inconsistent with the
> foregoing, all controversies which may arise
> between us concerning any transaction or
> the construction, performance, or breach of
> this or any other agreement between us,
> whether entered into prior, on or subsequent
> to the date hereof, shall be determined by
> arbitration.   Any arbitration under this

---

[4]   The Customer's Agreements specifically provide that the joint account will be identified as "Humptulips Ventures LLC et als " and "Humptulips Ventures LLC. Wynoochee Ventures LLC, Satsop Ventures LLC, Chehalis Ventures LLC. and Newaukum Ventures LLC shall have a 47.3%, 12 2%, 18.1%, 11 7% and 10 6% beneficial interest in the assets maintained in the Account "  *Id* ¶ 22   Each of the LLCs is jointly and severally liable with respect to all obligations under the Customer's Agreement  *Id.*

> agreement shall be determined pursuant to
> the rules then in effect of the National
> Association of Securities Dealers, Inc. or the
> Boards of Directors of the New York Stock
> Exchange, Inc or the American Stock
> Exchange Inc , as the undersigned may
> elect  If the undersigned fails to make such
> election, by registered letter or telegram
> addressed to you at your main office, before
> the expiration of five days after receipt of a
> written request from you to make such
> election, then you may make such election
> The award of the arbitrators or of the
> majority of them, shall be final, and
> judgment upon the award rendered may be
> entered in any court, state or federal, having
> jurisdiction

*Id* ¶ 14

15.   The LLC Plaintiffs executed the Customer's Agreements
and are bound by their broad arbitration provisions.  *See* Customer's
Agreements, ¶ 14, Exs. G-K (the Customer's Agreement provides that "THE
UNDERSIGNED AGREES .    all controversies which may arise between
us concerning any transaction or the construction, performance, or breach of
this or any other agreement between us, whether entered into prior, on or
subsequent to the date hereof, shall be determined by arbitration "); *see also*
*Freudensprung v  Offshore Technical Servs* , 379 F.3d 327, 339 (5th Cir.
2004) (Plaintiff bound by arbitration clause in consulting agreement he

8

signed).  Accordingly, the LLC Plaintiffs must arbitrate their claims against DBSI

16     The LLC Sole Member Plaintiffs are also bound by the arbitration agreements because although they signed on behalf of their LLCs, they are the sole members of those entities, and they intended to be bound.  *See* Compl ¶ 1(c).  Moreover, because the LLC Sole Member Plaintiffs each received direct benefits from the Customer's Agreements, they are estopped from avoiding their arbitration provisions  *See* Compl ¶ 22 (alleging that Plaintiffs filed tax returns which reflected losses claimed as a result of the BLIPS transaction), *Grigson v  Creative Artists Agency, L L C,* 210 F 3d 524, 527-29 (5th Cir  2000) ("A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause."); *Camferdam v  Ernst & Young Int'l, Inc,* No  02 Civ  10100, 2004 WL 307292, at *17 (S.D.N Y. Feb  13, 2004) (citing *Am  Bureau of Shipping v  Tencara Shipyard,* 170 F 3d 349, 353 (2d Cir. 1999))

17     The Keeter Family Plaintiffs, although non-signatories to the Customer's Agreements, are similarly bound   Like the LLC Sole Member Plaintiffs, they received benefits from the Customer's Agreements,

*see* Compl. ¶ 22, and therefore cannot avoid arbitrating their dispute with DBSI *See Grigson*, 210 F 3d at 527-29

18    Deutsche Bank AG can enforce the arbitration agreements between Plaintiffs and DBSI for a variety of reasons including, but not limited to, principles of agency and estoppel   For example, in an analogous case also involving a BLIPS strategy, the United States District Court for the Central District of California held that Deutsche Bank AG could invoke an arbitration agreement signed by DBSI and the plaintiffs because the plaintiffs alleged, *inter alia*, that Deutsche Bank AG conspired with DBSI to devise and promote BLIPS   *See J Paul Reddam et al v KPMG LLP, et al*, No SA CV 04-1227-GLT, slip op. at 9-10 (C D. Cal Dec. 15, 2004), attached hereto as Exhibit L   Accordingly, since Plaintiffs allege here that Deutsche Bank AG and other Defendants including DBSI participated in a civil conspiracy to "induce plaintiffs and others to invest in [BLIPS]," *see* Compl. ¶ 37, Deutsche Bank AG can enforce DBSI's arbitration agreement. *See MS Dealer Serv Corp v Franklin*, 177 F.3d 942, 947 (11th Cir 1999)

19.    Furthermore, as the *Reddam* court held, signatories to an arbitration agreement are estopped from avoiding arbitration with a non-

signatory when "(i) the complaint raises allegations of substantially interdependent and concerted misconduct by both a signatory and one or more non-signatories, and (ii) this misconduct is founded in and intertwined with the underlying contractual obligations." *Reddam,* No. SA CV 04-1227-GLT, slip op at 10 (C D Cal Dec 15, 2004) (citing *MS Dealer,* 177 F.3d at 947 (11th Cir 1999)), Ex L  Plaintiffs' claims against Deutsche Bank AG are based on the DBSI Customer's Agreements because the brokerage accounts were necessary components of the BLIPS strategy  Moreover, the Complaint alleges substantially interdependent and concerted misconduct by the Deutsche Bank Defendants. *See, e g ,* Compl ¶¶ 41, 50.  Plaintiff is therefore estopped from avoiding arbitration with Deutsche Bank AG. *See Sunkist Soft Drinks, Inc v Sunkist Growers, Inc ,* 10 F 3d 753, 758 (11th Cir 1993) (where the claims brought by plaintiff presume the existence of the agreement with the arbitration clause, plaintiff is estopped from avoiding arbitration with non-signatory); *J J Ryan & Sons, Inc v Rhone Poulenc Textile, S A ,* 863 F.2d 315, 320-21 (4th Cir 1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration

11

agreement "), *Camferdam v Ernst & Young Int'l, Inc*, No 02 Civ 10100, 2004 WL 307292, at *6 (S D N Y. Feb. 13, 2004) (plaintiff investors in tax-oriented strategies equitably estopped where claims raised allegations of substantially interdependent and concerted misconduct by non-signatory defendants and one or more of the signatories to the agreement to arbitrate).

## The Relationship Between Plaintiffs and Deutsche Bank

20    The relationship between Plaintiffs and Deutsche Bank "involve[d] property located abroad, envisage[d] performance or enforcement abroad or ha[d] some other reasonable relation with one or more foreign states." 9 U S.C § 202. As part of the BLIPS investment strategy, on October 12, 1999, the LLC Sole Member Plaintiffs entered into a Credit Agreement on behalf of the LLC Plaintiffs, with the Cayman Islands branch of Deutsche Bank AG, that envisioned performance abroad and contemplated foreign currency transactions   *See* Credit Agreement attached hereto as Exhibit M   Under the terms of the Credit Agreement, the Cayman Islands branch of Deutsche Bank AG agreed to make $501,300,000 available to the LLC Plaintiffs   *Id*, Section 2 01, Ex. M   Deutsche Bank AG is a German corporation   Compl. ¶ 10

12

21.   The   Credit   Agreement   provides   that   "Permitted Investments," to be made with the funds received from the Credit Agreement, include, among other things.

> b)  fixed  income  securities  purchased  with remaining maturities of 90 days or less issued by any governmental or corporate issuer, the outstanding long or short term unsecured debt of which is rated in one of two highest rating categories by an internationally recognized statistical rating organization, if such fixed income securities are (i) denominated in Dollars or (ii) denominated in Euros (or in the currency of any of the United Kingdom of Great Britain and Northern Ireland, the Federal Republic of Germany, the Republic of France, Japan, Canada and Italy),
>
> (c) any (i) interest rate swap transactions and (ii) interest rate options that are entered into with Deutsche Bank [defined as "Deutsche Bank AG"] or the Bankers Trust Company (or any of their Affiliates) as the counterparty requiring settlement not later than the Maturity Date, and
>
> (d) foreign currency spot, forward or option transactions entered into with Deutsche Bank (or any of its Affiliates[5]) as the counterparty requiring

---

[5]      "Affiliate" is defined in the Credit Agreement as.

with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under direct or indirect common control with, such Person.     A Person shall be deemed to control another Person if such Person possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such other Person, whether through the ownership of voting securities, by contract or otherwise

13

> settlement in not more than six months for Dollars
> or Euros with respect to (i) the currencies listed in
> clause (b)(ii) above, and (ii) the following
> additional currencies     Hong Kong Dollar,
> Argentine Peso, Egyptian Dollar, Saudi Riyal and
> Danish Kroner.

Credit Agreement, Section 1 01, Ex. M.

22   Accordingly, because the LLC Plaintiffs planned to
borrow $501,300,000 from a foreign entity to participate in the BLIPS
investment strategy, *see* Credit Agreement, Section 2.01, Ex. M. and the
Credit Agreement contemplated that the borrowed funds would be used to
implement foreign currency transactions with Deutsche Bank or any of its
affiliates, *id*, Section 1.01, the relationship between the parties involved
property located abroad and "envisioned performance abroad." *See Reddam*,
No SA CV 04-1227-GLT, slip op at 4 (C.D Cal. Dec. 15, 2004), Ex. L.
Thus, the arbitration agreements fall within the Convention, and removal of
this action is therefore proper under 9 U S.C. § 205.

---

Credit Agreement, Section 1 01, Ex. M.

Dated.  December 23, 2004

By. *[signature]*

J  Marbury Rainer
PARKER HUDSON RAINER
AND DOBBS
1500 Marquis Two Tower
285 Peachtree Center Ave, N E
Atlanta, Georgia 30303
Tel  404-420-5555
Fax  404-552-8409

*Attorneys for Defendant Deutsche Bank
AG and Deutsche Bank Securities Inc
d/b/a Deutsche Bank Alex  Brown*

Of Counsel

Lawrence M  Hill
Seth C. Farber
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000