EXHIBIT A

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

DARREN M KEETER, KELLY T )
KEETER, KAYLAN A KEETER, )
DARREN M KEETER, TRUSTEE )
FOR THE KAK TRUST, SOLE MEMBER )
OF NEWAUKUM VENTURES, LLC, )
JULIE L KEETER, GUARDIAN OF )
THE PROPERTY OF KYLAN A )
KEETER BRADLEY A. KEETER, )
CHERYL KEETER, STEVEN J )
KEETER, JAMES P KEETER, )
HUMPTULIP'S VENTURES, LLC. )
SATSOP VENTURES, LLC, )
WYNOOCHEE VENTURES, LLC, )
CHEHALIS VENTURES, LLC, and )
NEWAUKUM VENTURES LLC, )
                                                    )
        Plaintiffs,                        )
                                                    )
v                                                 )
                                                    )
KPMG, LLC, JEFFREY A EISCHEID, )
SIDLEY AUSTIN BROWN & WOOD, )
LLP, f/k/a BROWN & WOOD, LLP, )
R J RUBLE, DEUTSCHE BANK AG, )
DEUTSCHE BANK SECURITIES, INC, )
d/b/a DEUTSCHE BANK ALEX BROWN, )
PRESIDIO GROWTH, LLC, PRESIDIO )
ADVISORS, LLC, PRESIDIO ADVISORY )
SERVICES LLC, and JOHN LARSON )
                                                    )
        Defendants                        )
_____ )

FILED IN OFFICE

OCT 1 4 2004

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

CIVIL ACTION FILE
NO 2004CV92313

(JURY TRIAL DEMANDED)

**COMPLAINT**

ATTACHMENT TO SUMMONS

**PLAINTIFFS**

DARREN M KEETER,

KELLY T KEETER,

KAYLAN A KEETER

DARREN M KEETER, Trustee for the Kak Trust, Sole Member of Ewaukum Ventures LLC

JULIE L KEETER, Guardian of the Property of Kylan A Keeter,

BRADLEY A KEETER,

CHERYL KEETER,

STEVEN J KEETER,

JAMES P KEETER,

HUMPTULIP S VENTURES, LLC,

SATSOP VENTURES. LLC

WYNOOCHEE VENTURES, LLC,

CHEHALIS VENTURES, LLC, and

NEWAUKUM VENTURES, LLC,

**DEFENDANTS**

KPMG, LLC
Registered Agent
George W Sands, Suite 2000
303 Peachtree Street, NE
Atlanta, Georgia 30308

JEFFREY A EISCHEID
505 Reston Mill Lane, SE
Marietta Cobb County, Georgia 30067

SIDLEY AUSTIN BROWN & WOOD, LLP, f/k/a BROWN & WOOD, LLP
787 Seventh Avenue
New York, New York 10019

R J RUBLE
c/o Stuart Abrams
Frankel & Abrams
230 Park Avenue
New York, New York 10169

DEUTSCHE BANK AG
Registered Agent CT Corporation Systems
111 Eighth Avenue
New York, New York 10011

DEUTSCHE BANK SECURITIES, INC , d/b/a DEUTSCHE BANK ALEX BROWN
Registered Agent CT Corporation Systems
111 Eighth Avenue
New York, New York 10011

PRESIDIO GROWTH, LLC,
333 Hayes Street, Suite 200
San Francisco, California 94102

PRESIDIO ADVISORS, LLC
711 Navarro Street, Suite 750
San Antonio, Texas 78204

PRESIDIO ADVISORY SERVICES, LLC
333 Hayes Street, Suite 200
San Francisco California 94102

JOHN LARSON
333 Hayes Street, Suite 200
San Francisco, California 94102

Plaintiffs state and allege as follows

## PARTIES, JURISDICTION AND VENUE

1    Plaintiffs in this action are

(a)    James P Keeter, Julie L Keeter, Julie L Keeter, Guardian of the Property for Kaylan A Keeter, Kaylan A Keeter, and Darren M Keeter, Trustee for the benefit of the KAK Trust, are all residents of Georgia

(b)    Darren M Keeter Kelly T Keeter, Bradley Keeter, Steven J Keeter, and Cheryl Keeter are residents of Nevada

(c)    Humptulip's Venture, LLC, Wynoochee Ventures, LLC, Satsop Ventures LLC Chehalis Ventures, LLC, and Newaukum Ventures, LLC are limited liability corporations of which the sole members are, respectively James B Keeter, Bradley A Keeter, Darren M Keeter Steven A Keeter and Darren M Keeter

2    Defendant KPMG, LLP ("KPMG ) was at all times relevant herein an international accounting and financial consulting firm   KPMG is doing business in the State of Georgia maintains an office at 303 Peachtree Street Fulton County, Georgia and may be served through its registered agent George W Sands, Suite 2000, 303 Peachtree Street NE Atlanta Georgia 30308

3    Defendant Jeffrey A Etscheid ( Etscheid") was at all times relevant hereon a partner with KPMG and resides at 505 Reston Mill Lane, SE, Marietta, Cobb County Georgia 30067 and may be served at that address  Etscheid is a citizen of Georgia and subject to the jurisdiction of this

2

Court

4       Defendant Sidley Austin Brown & Wood, LLP, ("SAB&W"), formerly known as Brown & Wood, LLP, with its principal place of business in New York City and a practice that is now national and international in scope  SAB&W was an integral member of the scheme to design and sell illegal tax shelter products in return for huge fees, as described hereinafter  SAB&W was a co-conspirator with other defendants with respect to the wrongful conduct at issue  As a result, the financial business in Georgia during the period implicated by this complaint  SAW&B may be served at its New York Office located at 787 Seventh Avenue, New York, New York  10019

5       Defendant J R Ruble is a former partner of SAW&B, was a co-conspirator with the other defendants and conducted business within the state of Georgia and is subject to the jurisdiction of this Court

6       Defendant Presidio Growth, LLC ("Presidio Growth"), is a Delaware limited liability company  Presidio Growth acted as an investment advisor in regard to the tax shelters described in this complaint and conspired with the other defendants, thereby subjecting itself to the jurisdiction of the Court  Presidio Growth can be served at its corporate office located at 333 Hayes Street, Suite 200, San Francisco, California  94102

7       Presidio Advisors Services, LLC (Presidio Advisors") is and was a co-conspirator with other defendants with respect to the wrongful conduct described in this complaint  Presidio Advisors acted as a co-promoter and co-designer of the BLIPS tax shelter described herein, and in

3

so doing, conducted substantial business in the state of Georgia and is subject to the jurisdiction of this Court   Presidio Advisors may be served at its corporate offices located at 711 Navarro Street Suite 750, San Antonio, Texas 78204

8       Defendant Presidio Advisory, Services LLC ("Presidio Advisory Services") is a manager of Presidio Growth   Presidio Advisory was a co-conspirator with the other defendants with respect to the wrongful conduct described in this complaint   Presidio Advisory acted a co-promoter and co-designer of the BLIPS tax shelter described herein, and in so doing, conducted substantial business in the State of Georgia and is therefore subject to the jurisdiction of this Court   Presidio Advisory Services may be served at its corporate office located at 333 Hayes Street Suite 200 San Francisco California 94102   Presidio Growth, Presidio Advisors and Presidio Advisory Services are referred to as the "Presidio Defendants '

9       Defendant John Larson was a former partner of KPMG and a co-conspirator with the other defendants and conducted business within the State of Georgia and is subject to the jurisdiction of this Court   Larson is or was a Member/Manager of the Presidio Defendants

10      Defendant Deutsche Bank AG ("Deutsche Bank") is a German corporation with its principal place of business at Taunusanlage 12 60325 Frankfurt am Main, Germany   Deutsche Bank is continuously and systematically engaged in business in the State of Georgia, as further described herein  and thus may be found in the State of Georgia, and has agents doing business in the State of Georgia   Deutsche Bank may be served with process by serving its registered agent C T Corporation

4

15     The defendants in this case conspired to develop, promote and market illegal and abusive tax shelter products to hundreds of unsuspecting clients, including the plaintiffs. The defendants promoted a variety of different so-called "tax strategies," which they referred to internally and among each other as "products," including the Foreign Leveraged Investment Program, which the defendants referred to by the acronym "FLIP," the Offshore Portfolio Investment Strategy referred to as "OPIS, and the Bond Linked Issue Premium Structure, referred to as "BLIPS." Plaintiffs were sold the BLIPS tax products which the defendants marketed to him as lawful tax avoidance strategies. In reality, as known by each of the defendants, BLIPS were illegal and abusive tax shelters designed to "create" a paper capital loss to offset a real capital gain according to a process that involved, in the words of KPMG tax specialist Bob Simon, in a February 23 1998 internal KPMG memo that referred specifically to FLIP, but applies equally to BLIPS "pre-wired deals. By definition, the pre-wired" nature of these deals made them illegal and abusive when used to avoid taxes

16     The defendants traded on their national reputations and positions of trust with the Keeler plaintiffs to fraudulently induce the plaintiffs into unwittingly investing in illegal and abusive tax shelters that have caused them substantial money damages and untold emotional strain and public embarrassment

17     The facts behind the scheme alleged in this Complaint have come to light in part as a result of an investigation that has been conducted by the Permanent Subcommittee on

6

Investigations of the United States Senate Committee on Governmental Affairs (the ' Senate Subcommittee") As a part of its year and a half long investigation, the Senate Subcommittee issued numerous subpoenas and document requests and interviewed. among others representatives of the defendants The results of this lengthy investigation are set forth in a report released on November 17, 2003, entitled U S Tax Shelter Industry The Role of Accountants, Lawyers and Financial Professionals" (the ' Senate Subcommittee Report"), in advance of two days of committee hearings held on November 18 and 20, 2003 The Senate Subcommittee Report focuses on four tax shelters that KPMG developed and marketed FLIP, OPIS, BLIPS and SC2 The Senate Subcommittee Report cites to and quotes from internal documents of the defendants that would not otherwise be publicly available, as well as statements made by representatives of the defendants to members of the investigative staff during the course of the investigation

18      The details of BLIPS were never explained to plaintiffs, who never would have understood them in any event

19      In addition to acting as the investment advisor that implemented BLIPS, Presidio Growth also acted as the "managing member" of one of the entities involved in the BLIPS transactions Presidio Growth received substantial fees for acting as ' managing member ' even though or information and belief, Presidio provided no "management" or other legitimate services According to KPMG's December 31, 1999 opinion letter, Presidio Growth was responsible for designing BLIPS

7

20    SAB&W provided "more likely than not" opinion letter for BLIPS    Plaintiffs detrimentally relied on the false promise that they would receive an "independent" opinion from a prominent Wall Street firm confirming the legitimacy of BLIPS

21    All of the "more likely than not" opinion letters that plaintiffs received were themselves fraudulent, recklessly or negligently prepared, because *BLIPS was not   more likely than not' to be deemed legitimate by the IRS*  Indeed, just the opposite was true, and the defendants knew, or were reck'ess or negligent in not knowing, that this was the case. Moreover, the opinion letters rendered by SAB&W were not independent because SAB&W was an undisclosed joint developer, marketer and promoter of BLIPS and, therefore, incapable of rendering independent advice about the bona fides of those products

22    Plaintiffs' BLIPS transactions yielded supposed capital losses over two tax years 1999 and 2000 and could provided losses in future years   KPMG prepared plaintiffs' tax returned for 1999 and 2000, both of which reflected losses claimed as a result of BLIPS  Absent defendants fraud, plaintiffs could have utilized alternative, traditional investment and tax avoidance strategies

23    As the Senate Subcommittee discovered, "the development and approval process resulted in "the marketing of the BLIPS tax product to 186 individuals "  KPMG raked in more than $50 million from its sale of BLIPS  Defendants either knew or were reckless or negligent in not knowing from the outset, that their BLIPS product would not pass muster with the IRS

24    The Subcommittee Report concludes that '[t]he events and communications leading

8

to BLIPS' approval for sale are troubling and revealing for a number of reasons. First, they show that senior KPMG tax professionals knew the proposed tax product, BLIPS, was 'clearly one that the IRS would view as falling squarely within the tax shelter orbit.' Second, they show how important 'speed to market' was as a factor in the review and approval process. Third, they show the interpersonal dynamics that, in this case, led KPMG's key technical tax expert to reluctantly agree to approve a tax product that he did not support or want to be associated with, in response to the pressure exerted by senior Tax Services professionals to approve the product for sale. (Subcommittee Report, Ex. A at pp. 40-41)

    25    As described in the Subcommittee Report:

> Internal KPMG emails reveal an extended, unresolved debate among WNT [KPMG's Washington National Tax Practice] and DPP [KPMG's Department of Practice and Professionalism] tax professionals over whether BLIPS met the technical requirements of federal law, a debate which continued even after the BLIPS was approved for sale. Several outside firms were also involved in BLIPS' development including Sidley Austin Brown & Wood, a law firm, and Presidio Advisory Services, an investment advisory firm run by two former KPMG partners.

(Subcommittee Report, Ex. A at p. 35.)

    26    The Subcommittee Report further details the prolonged unresolved KPMG internal debate about whether KPMG could issue a "more likely than not" opinion letter for LIPS that took place via KPMG emails. More than one KPMG tax specialist opined that KPMG could *not* issue such an opinion, i.e., that it was not "more likely than not" that BLIPS would withstand IRS scrutiny

9

in the event of an audit  The debate culminated in a shocking and lengthy email sent by the head of

WNT to eight senior KPMG tax professionals, including the Tax Services Practices head and the

DPP head

> Many people have worked long and hard to craft a tax opinion in the
> BLIPS transaction that satisfies the more likely than not standard  I
> believed that we in WNT had completed our work a month ago when
> we forwarded the [draft] opinion to Larry
>
> [T]his is a classic transaction where we can labor over the technical
> concerns, but the ultimate resolution – if challenged by the IRS – will
> be based on the facts (or lack thereof)  *In short, our opinion is only
> as good as the factual representations that it is based upon*      The
> real 'rubber meets the road' will happen when the transaction is sold
> to investors, what the investors' actual motive for investing the
> transaction is and how the transaction actually unfolds       Third,
> our reputation will be used to market the transaction  This is a given
> in these types of deals  Thus, we need to be concerned about who we
> are getting in bed with here  In particular, do we believe that Presidio
> has the integrity to sell the deal on the facts and representations that
> we have written our opinion on?!
>
> Having said all of the above, I do believe **the time has come to shit
> and get off the pot**  The business decisions to me are primarily two
> (2) Have we drafted the opinion with the appropriate limiting bells
> and whistles       and (2) **Are we being paid enough to offset the
> risks of potential litigation resulting from the transaction?... My
> own recommendation is that we should be paid a lot of money
> here for our opinion** *since the transaction is clearly one that the
> IRS would view as falling squarely within the tax shelter orbit .  .
> .* "

(Subcommittee Report, Ex  A at 39 and note 99) (emphasis added)  The Tax Services operations

head responded to the email later the same day  "I think it's shit OR get off the pot  *I vote for*

10

*shit* " (*Id* ) (Emphasis added)

27      Of course, KPMG's opinion letter did not state that BLIPS was "clearly 'a transaction that the IRS would view as falling squarely within the tax shelter orbit      '' In fact, the KPMG opinion letter and the SAB&W opinion letter both fraudulent, recklessly or negligently stated that it was "more likely than not" that "[a]ny loss recognized by [plaintiffs]      will be characterized as a capital loss "

28      Moreover, the promulgation of Notice 99-59, 1992-2 C B , 999 IRB LEXIS 424 (Dec 27, 1999) removes any room for doubt as to whether the defendants were aware, or were reckless or negligent in not being aware, prior to rendering their opinions to plaintiffs that BLIPS was improper and illegal  The IRS stated in that Notice that  losses" resulting from BLIPS transactions would not be allowed  The BLIPS opinion letter rendered by SAB&W, and the BLIPS opinion letter rendered by KPMG, both were issued after, and fraudulently misrepresented the effect of  Notice 99 59  1992-2 C B  761, 999 IRB LEXIS 424 (Dec  27, 1999)

29      In the opinion letters that KPMG and SAB&W rendered to plaintiffs on both the BLIPS strategies, KPMG and SAB&W purported to rely on factual representations made by plaintiffs to them  Indeed, the KPMG email quoted above reveals that KPMG considered these factual representations of paramount importance to crafting an opinion letter with sufficient  bells and whistles " However, these so-called 'factual representations" were just one more part of the defendants  scheme  KPMG told plaintiffs that the representations contained in the representation

letters that plaintiffs had to execute for both FLIP and BLIPS, were just a necessary step in the paperwork. In fact, these representations were drafted and designed by the defendants as one more "pre-wired" step in their generic tax shelters.

## FIRST CLAIM FOR RELIEF

### (Action for Damages Caused from Civil Conspiracy and

### Facilitation of Fraud – All Defendants)

30      The foregoing paragraphs are realleged.

31      Defendants have engaged in a civil conspiracy consisting of (1) an agreement between and among them, (2) to misrepresent to plaintiffs the true nature of the tax products described herein and to defraud plaintiffs into paying large fees for worthless products, as determined by the IRS, all of which agreement resulted in injury to plaintiffs and culminated in the preparation and filing of false tax returns in 1999 and 2000. Examples of the overt acts committed by defendants are reflected in this First Claim for Relief and are further detailed in this Complaint. Such detailed allegations of acts committed in furtherance of this conspiracy are incorporated into this claim for relief.

32      On information and belief, prior to the marketing and sale of their tax products to plaintiffs defendants entered into an agreement, association and union associated-in-fact to devise design facilitate promote, and sell their tax products to plaintiffs and other individuals throughout the United States for the express purpose of generating and sharing in millions of dollars in fees. The receipt of those fees was the sole motive of the defendants in the development, design,

12

promotion, and execution of the scheme  Upon information and belief, many of the fees charged and received by defendants were undisclosed to plaintiffs, and represent yet another aspect of defendants deceptive and unlawful conduct

33     The receipt of substantial fees and the pecuniary gain from those fees was the sole motive for the defendants' conduct  The providing of professional services to clients, if done at all was merely an incidental by-product of and was not a motivating factor for defendants  conduct alleged herein  Defendants' conspiracy gave each of the participating defendants a pecuniary interest in the advice and professional services they would render, allowed the other defendants to direct and regulate their professional judgment, and impaired the exercise of that judgment and the duty of care loyalty and honesty each of the aforementioned defendants owed to the plaintiff and their other clients

34     The IRS has concluded that are illegal, "abusive" tax shelters

35     Defendants' wrongful behavior caused damage to plaintiffs and other clients of KPMG, the Deutsche Bank defendants, the Presidio Defendants, SAB&W, Eischeid, Ruble and Larson who were defrauded by *interalia* (1) defendants' failure to disclose the substantial risks involved in the BLIPS product, (2) defendants' assurances that BLIPS product were legitimate tax avoidance strategies, (3) defendants' failure to advise plaintiffs that BLIPS were not registered as tax shelters even though they were required to be  (4) defendants' failure to provide advice about lawful tax planning and investment alternatives, which plaintiffs would have pursued had plaintiffs

13

known that BLIPS were illegal, unregistered tax shelter

36      As described throughout this Complaint, defendants' conspiracy was perpetrated by as alleged herein, willfully defrauding clients such as plaintiffs, and by misrepresenting material facts and failing to disclose material risks   Had it not been for those willful and intentional mis-representations, plaintiffs would not have participated in BLIPS   Avoiding participation in these arrangement would have saved plaintiffs' multi-million dollar transaction fees, and avoided tax interest and applicable penalties   Plaintiffs also would have been able to pursue more reasonable and legitimate tax planning   The conduct of defendants was the direct and immediate cause of plaintiffs misinformed decisions to invest his money in their illegal and abusive tax shelters

37      The collaboration, participation, and overt acts of defendants in the civil conspiracy was undertaken in an effort to induce plaintiffs and others to invest in the transactions and, in turn to generate large fees to defendants.  Defendants wrongfully solicited and encouraged plaintiffs and other clients into unknowingly investing in abusive tax shelters without disclosing the unacceptable risks involved

38      Defendants knew or should have known the investment tax strategy was an abusive tax shelter   Defendants knowingly or recklessly made false representations to plaintiffs concerning the viability and *bona fides* of BLIPS and knowingly or recklessly caused to be issued incorrect and false tax opinions concerning BLIPS.

39      As a result of defendants' concerted conduct, plaintiffs paid unnecessary fees related

14

to BLIPS, have incurred costs and may incur additional costs in connection with the IRS audit on account of BLIPS, each and all of which constitute actual damages suffered by plaintiffs Defendants' concerted conduct has, moreover, proximately caused this and other damages to plaintiffs, which exceed $10,000,000 Plaintiffs are informed and believe that defendants' conduct was intentional willful and wanton  Therefore, plaintiffs are entitled to recover punitive damages

## SECOND CLAIM FOR RELIEF

### (Fraud Against All Defendants)

40     The foregoing allegations are realleged

41     In their communications with plaintiffs, defendants (through their agents and representatives), acting in concert with one another, made numerous intentional misrepresentations and engaged in numerous material omissions in marketing, establishing and receiving funds for BLIPS  The defendants' representations were known to be false and/or omissive when made  or were made with reckless disregard for their falsity  Such misrepresentations and material omissions were unlawful and constituted overt acts in furtherance of a conspiracy to defraud

42     As a result of plaintiffs' reliance on the defendants' false statements, plaintiffs have been damaged in an amount in excess fo 10,000,000, as heretofore alleged, said amount to be shown at the trial of this action  Plaintiffs allege that defendants' misrepresentations and concealments of material facts were intentional, willful and wanton  Therefor plaintiffs are entitled to recover punitive damages from defendants

15

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty – All Defendants)

43    The foregoing allegations are realleged

44    Defendants owed plaintiffs fiduciary duties, including the duty of good faith and fair dealing, the duty of full disclosure, and the duty of care arising out of their relationship with plaintiffs as alleged more fully above

45    Defendants held and continue to hold a special relationship with plaintiffs

46    Defendants had a duty to provide complete and truthful information to plaintiffs when offering the products described herein

47    All defendants engaged in the aforesaid misconduct both individually and by aiding and abetting each other in the commission of the wrongs alleged herein  By engaging in the conduct alleged herein, defendants breached their fiduciary duties to plaintiffs by misrepresenting or omitting and failure to disclose, while under a duty to do so, the numerous material facts set forth more fully herein

48    As a result of defendants' breaches of fiduciary duty, plaintiffs have been damaged in an amount in excess of 10,000,000, as heretofore alleged, said amounts to be shown at the trial of this action  Plaintiffs allege that defendants' breaches of fiduciary duty were intentional willful and wanton.  Therefore plaintiffs are entitled to recover punitive damages from defendants

### FOURTH CLAIM FOR RELIEF

16

business, which duty defendants breached  By reason of the foregoing  plaintiffs have been damaged
in an amount in excess of  of $10,000,000, as hereto fore alleged, said amounts to be shown at the
trial of this action  Plaintiffs allege that defendants' wrongful conduct was intentional  willful and
wanton  Therefore plaintiffs are entitled to recover punitive damages from defendants

### FIFTH CLAIM FOR RELIEF

#### (Negligence and Gross Negligence Against KPMG and Jeffrey Eischeid)

56      The foregoing allegations are realleged

57      KPMG is an accounting, tax compliance, and consulting firm which provides services
for compensation by persons such as plaintiffs  Loftin  Defendant Eischeid was a partner of KPMG
By virtue of KMPG and Defendant Eischeid's special skills in accounting, tax compliance, and
consulting, KPMG and Eischeid owed a duty to plaintiffs to use the skill and care of a reasonably
competent accountant and tax consultant  KPMG and Eischeid owed a duty to plaintiffs to perform
professional accounting, financial planning, and tax consulting services in a proper, skillful and
careful manner

58      KPMG and Eischeid recklessly and/or with negligence or gross negligence breached
its duty owed to plaintiffs to act with the care and skill of a reasonably competent accountant and tax
consultant

59      KMPG and Eischeid intentionally, recklessly and/or with negligence or gross
negligence breached its duty owed to plaintiffs by other acts and omissions including those acts and

breached its duty to plaintiffs to act with the care and skill of reasonably competent attorneys

65      SAB&W and Ruble intentionally, reckless and/or with negligence or gross negligence breached its duty owed to plaintiffs by other acts and omissions including those acts and omissions previously alleged   SAB&W and Ruble's breach of duty alleged above constitutes malpractice

66      As a direct and proximate result of SAB&W's and Ruble's malpractice, in violation of the standard of care or skill required of a reasonably competent attorney, plaintiffs have incurred economic and consequential damages in an amount in excess of 10,000,000  as heretofore alleged, said amounts to be shown at the trial of this action   Plaintiffs allege that defendants' wrongful conduct was intentional, willful and wanton   Therefore plaintiffs are entitled to recover punitive damages from defendants

67      With respect to certain of the claims of malpractice stated herein, there is a good faith basis to believe that the statute of limitations will expire within ten (10) days of the filing of the Complaint   Accordingly, under O C G A  § 9-11-9 1, plaintiffs are entitled to file the affidavit required by O C G A  § 9-11-9.1 within forty-five (45) days of the filing of the Complaint

### SEVENTH CLAIM FOR RELIEF

#### (Unfair and Deceptive Trade Practices)

68      The foregoing allegations are realleged

69      The acts of defendants  in relation to the billing of expenses and fees for unlawful and fraudulent work  as alleged above  constitute unfair and deceptive practices

20

70      The acts of defendants, as alleged, have proximately caused damage to plaintiffs in an amount in excess of 10,000,000, said amounts to be shown at the trial of this action   Plaintiffs allege that defendants' wrongful conduct was intentional, willful and wanton   Therefore plaintiffs are entitled to recover punitive damages from defendants.

### EIGHT CLAIM FOR RELIEF

### (Punitive Damages – All Defendants)

71      The foregoing allegations are realleged

72      As detailed by the foregoing allegations, defendants' conduct was willful, wantor and fraudulent

73      As detailed by the foregoing allegations, defendants' motives and conduct were based on an attempt to perpetrate a fraud against plaintiffs and hundreds of other victims for the purpose of generating hundreds of millions of dollars in fees

74      As previously detailed, the defendants had specific awareness of the probable harmful consequences of their conduct, knew they stood in fiduciary relationships with defendants, and still worked to conceal the material facts related to the consequences of their conduct

75      As detailed previously, defendants have perpetrated their tax shelters on hundreds of victims

76      As detailed previously, defendants have profited hugely from their tortious conduct as reflected by the exorbitant fees they charged to plaintiffs and others in connection with BLIPS

21

(f)     Such other and further relief as the Court may deem just and proper

Respectfully submitted,

DOFFERMYRE SHIELDS, CANFIELD KNOWLES
& DEVINE

By: _____   _____.
        Everette L. Doffermyre

1355 Peachtree Street
Suite 1600
Atlanta, Georgia 30309
(404) 881-8900

James A. Roberts, III
LEWIS & ROBERTS, P.L.L.C
1305 Navaho Drive, Suite 400
Post Office Box 17529
Raleigh, NC 27619-7529
(919) 981-0191

Gary V. Mauney
LEWIS & ROBERTS
128 S. Tryon Street
Suite 1100
Charlotte, NC 28202-5012
(704) 347-8990

23

DO NOT WRITE IN THIS SPACE

GEORGIA
FULTON COUNTY
SUPERIOR
~~STATE~~ COURT OF FULTON COUNTY
    (Civil Division)

___DARREY M  KEETER_____

_(SEE ATTACHED LIST)_____

_____
    (Plaintiff's Name and Address)
                    vs.
KPMG, LLC

_(SEE ATTACHED LIST)_____

_____
    (Defendant's Name and Address)

             **SUMMONS**

| TYPE OF SUIT | AMOUNT OF SUIT | |
|---|---|---|
| ☐ Account | Principal | $_____ |
| ☐ Contract | | |
| ☐ Note | Interest | $_____ |
| ☐ Tort | | |
| ☐ Traver | Atty Fees | $_____ |
| ☐ Special Lien | | |
| ☐ Foreign Judgment | Ct Costs | $_____ |
| ☐ Personal Injury | | |

TO THE ABOVE NAMED-DEFENDANT:
    You are hereby required to file with the Clerk of said court and to serve a copy on the
Plaintiff's Attorney  or on Plaintiff if no Attorney, to-wit:

Everette L. Doffermyre                    ☐ NEW FILING
(Name)
1355 Peachtree St , Suite 1600, Atlanta, GA   ☐ REFILING
(Address)                                    PREVIOUS CASE NO. _____
404-881-8900            30309
(Phone No.)

an answer to the complaint which is herewith served on you, within (30) days after service
on you, exclusive of the day of service.  If you fail to do so, judgment by default will be
taken against you for the relief demanded in the complaint, plus cost of this action.
This  11 OCT 2004 _____        _____
                                               Deputy Clerk

                    WRITE VERDICT HERE

We, the jury, find for _____

_____

_____

This _____ day of _____, 19_____.

                    _____
                              Foreperson

             (Staple to front of ORIGINAL complaint)

                                            14-011 894


CT System

Service of Process Transmittal Form
Atlanta, Georgia

11/23/2004

Via Federal Express (2nd Day



TO   Will Christoph Vice President
Deutsche Bank AG
Mail Stop NYC60-3615
60 Wall Street
New York, NY 10005

RE   **PROCESS SERVED IN GEORGIA**

FOR   Deutsche Bank AG Domestic State Germ

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS

| | |
|---|---|
| 1 TITLE OF ACTION | Darren M Kester et al  Pltfs vs KPMG, LLC, et al  and including Deutsche Bank AG  Dft |
| 2 DOCUMENT(S) SERVED | Summons w/ Attachment,  Complaint   Sheriff's Entry of Service |
| 3 COURT | Superior Court, Fulton County, GA<br>Case Number 2004 CV 92313 |
| 4 NATURE OF ACTION | Def's Fraud in the Marketing & Promotion of Legal Tax Avoidance Products (Illegal &<br>Abusive Tax Shelters), etc    Seeking in excess of $10,000 00 |
| 5 ON WHOM PROCESS WAS SERVED | CT Corporation System, Atlanta, Georgia |
| 6 DATE AND HOUR OF SERVICE. | By Process server on 11/23/2004 at 11:00 |
| 7 APPEARANCE OR ANSWER DUE | 30 days after svc |
| 8 ATTORNEY(S) | 404/ 881 8900<br>Everette L Doffermyre<br>Doffermyre Shields Canfield Knowles<br>& Devine<br>1355 Peachtree St , Ste  1600<br>Atlanta, GA  30309 |
| 9 REMARKS | Served by the Sheriff<br>-Note sent 11/23/2004 to WILL CHRISTOPH@DB COM |

SIGNED   CT Corporation System

PER   Cindy J  Zidick /MJ
ADDRESS   1201 Peachtree Street N E
Atlanta  GA  30361
SOP WS 0006794600

Information contained on this transmittal form is recorded for  C T Corporation  System a record  keeping  purposes only and to permit quick reference
for the recipient  This information does not constitute a legal opinion as to the nature of action  the amount of damages  the answer date  or any
information that can be obtained from the documents themselves  The  recipient is responsible for interpreting the documents and for taking the
appropriate action

SHERIFF'S ENTRY OF SERVICE                                    SC-85-2                          CLYDE CASTLEBERRY CO  CO+MOTION GA 30016

|  | | |
|---|---|---|
| Civil Action No  __2004-CV-92313__ | Superior Court ☑  State Court ☐  Juvenile Court ☐  Georgia,____ | Magistrate Court ☐  Probate Court ☐ |
| Date Filed  __October 11, 2004__ | Fulton | COUNTY |

Attorney's Address

Everette L. Doffermyre
Doffermyre Shields Canfield Knowles & Devine
1355 Peachtree Street, Suite 1600
Atlanta, Georgia  30309

Darren M. Kaeter, et al.
_____ Plaintiff

VS

KPMG, LLC, et al.

Name and Address of Party to be Served

Deutsche Bank AG
c/O Registered Agent, CT Corporation Systems
1201 Peachtree Street, NE
Atlanta, Georgia  30361

_____ Defendant

_____ Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant_____personally with a copy
of the within action and summons

**NOTORIOUS** ☐

I have this day served the defendant_____by leaving a
copy of the action and summons at his most notorious place of abode in this County

Delivered same into hands of_____described as follows
age about_____years  weight_____pounds  height about_____feet and_____inches  domiciled at the residence of
defendant

**CORPORATION** ☐

Served the defendant _Deutsche Bank AG_ a corporation
by leaving a copy of the within action and summons with _CT Corp_
in charge of the office and place of doing business of said Corporation in this County

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said
affidavit  and on the same day of such posting by depositing a true copy of same in the United States Mail  First Class in an envelope properly addressed to the
defendant(s) at the address shown in said summons  with adequate postage affixed thereon conta ning notice to the defendant(s) to answer said summons at the
place stated in the summons

**NON EST** ☐

Diligent search made and defendant_____
not to be found in the jurisdiction of this Court

This _23_ day of _Nov_  20 _04_

_____
By _[signature]_
DEPUTY

SHERIFF DOCKET_____ PAGE_____

WHITE-CLERK   CANARY-PLAINTIFF   PINK—DEFENDANT

"SECOND ORIGINAL"   .   DO NOT WRITE IN THIS SPACE

COPY

GEORGIA
FULTON COUNTY
SUPERIOR
STATE COURT OF FULTON COUNTY
(Civil Division)

DARREN M. KEETER

(SEE ATTACHED LIST)

(Plaintiff's Name and Address)
vs.

DEUTSCHE BANK AG

(SEE ATTACHED LIST)

(Defendant's Name and Address)

SUMMONS

| TYPE OF SUIT | AMOUNT OF SUIT | |
|---|---|---|
| ☐ Account | Principal | $ _____ |
| ☐ Contract | | |
| ☐ Note | Interest | $ _____ |
| ☐ Tort | | |
| ☐ Trover | Atty Fees | $ _____ |
| ☐ Special Lien | | |
| ☐ Foreign Judgment | Ct Costs | $ _____ |
| ☐ Personal Injury | | |

TO THE ABOVE NAMED-DEFENDANT:
    You are hereby required to file with the Clerk of said court and to serve a copy on the
Plaintiff's Attorney, or on Plaintiff if no Attorney, to-wit:

Everette I. Doffermyre
(Name)
1355 Peachtree St., Suite 1600, Atlanta, GA 30309
(Address)
404 - 881-8900
(Phone No.)

an answer to the complaint which is herewith served on you, within (30) days after service
on you, exclusive of the day of service. If you fail to do so, judgment by default will be
taken against you for the relief demanded in the complaint, plus cost of this action.
This _____

_____
Deputy Clerk

DEFENSE MAY BE MADE, AND JURY TRIAL DEMANDED, if desired, in the Clerk's Office at
rG100, 185 Central Avenue, SW, (Between MLK, Jr. Drive and Mitchell Street), Atlanta, Georgia
30303

    If the sum claimed in the suit, or value of the property sued for, is $300.00 or more
Principal, the defendant must admit or deny the paragraphs of plaintiff's petition by making
written Answer. Such paragraphs undenied will be taken as true. If the plaintiff's petition
is sworn to, or if suit is based on an unconditional contract in writing, then the
DEFENDANT'S ANSWER MUST BE SWORN TO.

    If the principal sum claimed in the suit, or value of the property sued for, is less
than $300.00 and is on a note, unconditional contract account sworn to, or the petition
sworn to, defense must be made by filing a sworn Answer setting up the facts relied on as a
defense.

SERVED   This __23__ day of __Nov__ ____, _2004_

_____
DEPUTY MARSHAL STATE COURT OF FULTON COUNTY

(Staple to front of SERVICE COPY of complaint)

14-014-1094

## ATTACHMENT TO SUMMONS

**PLAINTIFFS:**

DARREN M KEETER,

KELLY T KEETER,

KAYLAN A KEETER,

DARREN M KEETER, Trustee for the Kak Trust, Sole Member of Ewaukum Ventures, LLC,

JULIE L KEETER, Guardian of the Property of Kylan A Keeter,

BRADLEY A KEETER,

CHERYL KEETER,

STEVEN J KEETER,

JAMES P KEETER,

HUMPTULIP'S VENTURES, LLC,

SATSOP VENTURES, LLC

WYNOOCHEE VENTURES, LLC,

CHEHALIS VENTURES, LLC, and

NEWAUKUM VENTURES, LLC,

**DEFENDANTS:**

KPMG, LLC
Registered Agent
George W Sands, Suite 2000
303 Peachtree Street, NE
Atlanta, Georgia 30308

JEFFREY A EISCHEID
505 Reston Mill Lane, SE
Marietta, Cobb County, Georgia 30067

SIDLEY AUSTIN BROWN & WOOD, LLP, f/k/a BROWN & WOOD, LLP
c/o John C Feldkamp, Registered Agent
787 Seventh Avenue
New York, New York 10019

R J RUBLE
c/o Stuart Abrams
Frankel & Abrams
230 Park Avenue
New York, New York 10169

DEUTSCHE BANK AG
Registered Agent CT Corporation Systems
1201 Peachtree Street, NE
Atlanta, Georgia 30361

DEUTSCHE BANK SECURITIES, INC , d/b/a DEUTSCHE BANK ALEX BROWN
Registered Agent CT Corporation Systems
111 Eighth Avenue
New York, New York 10011

PRESIDIO GROWTH, LLC,
c/o Registered Agent
CT Corporation System
818 West 7th Street
Los Angeles, CA 90017

PRESIDIO ADVISORS, LLC
c/o Registered Agent
CT Corporation System
818 West 7th Street
Los Angeles, CA 90017

PRESIDIO ADVISORY SERVICES, LLC
c/o Registered Agent
CT Corporation System
818 West 7th Street
Los Angeles, CA 90017

JOHN LARSON
14 Glover Street
San Francisco, California 94109

.

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

DARREN M KEETER, KELLY T )
KEETER, KAYLAN A KEETER, )
DARREN M KEETER, TRUSTEE )
FOR THE KAK TRUST, SOLE MEMBER )
OF NEWAUKUM VENTURES, LLC, )
JULIE L KEETER, GUARDIAN OF )
THE PROPERTY OF KYLAN A )
KEETER, BRADLEY A KEETER, )
CHERYL KEETER, STEVEN J )
KEETER, JAMES P KEETER, )
HUMPTULIP'S VENTURES, LLC, )
SATSOP VENTURES, LLC, )
WYNOOCHEE VENTURES, LLC, )
CHEHALIS VENTURES, LLC, and )
NEWAUKUM VENTURES, LLC, )
                                          )
          Plaintiffs,                     )     CIVIL ACTION FILE
                                          )     NO _____
                                          )
v                                         )     (JURY TRIAL DEMANDED)
                                          )
KPMG, LLC, JEFFREY A EISCHEID, )
SIDLEY AUSTIN BROWN & WOOD, )
LLP, f/k/a BROWN & WOOD, LLP, )
R J RUBLE, DEUTSCHE BANK AG, )
DEUTSCHE BANK SECURITIES, INC , )
d/b/a DEUTSCHE BANK ALEX BROWN, )
PRESIDIO GROWTH, LLC, PRESIDIO )
ADVISORS, LLC, PRESIDIO ADVISORY )
SERVICES, LLC, and JOHN LARSON, )
                                          )
          Defendants                      )
                                          )

FILED IN OFFICE

OCT 1 1 2004

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY GA

COMPLAINT

Plaintiffs state and allege as follows

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiffs in this action are:

(a)     James P Keeter, Julie L Keeter, Julie L Keeter, Guardian of the Property for Kaylan A Keeter, Kaylan A Keeter, and Darren M Keeter, Trustee for the benefit of the KAK Trust, are all residents of Georgia

(b)     Darren M Keeter, Kelly T Keeter, Bradley Keeter, Steven J Keeter, and Cheryl Keeter are residents of Nevada.

(c)     Humptulip's Venture, LLC, Wynoochee Ventures, LLC, Satsop Ventures, LLC, Chehalis Ventures, LLC, and Newaukum Ventures, LLC are limited liability corporations of which the sole members are, respectively, James B Keeter; Bradley A Keeter, Darren M Keeter, Steven A Keeter and Darren M Keeter

2.     Defendant KPMG, LLP ("KPMG") was at all times relevant herein, an international accounting and financial consulting firm   KPMG is doing business in the State of Georgia, maintains an office at 303 Peachtree Street, Fulton County, Georgia and may be served through its registered agent, George W Sands, Suite 2000, 303 Peachtree Street, NE, Atlanta, Georgia 30308

3.     Defendant Jeffrey A Eischeid ("Eischeid") was, at all times relevant hereon, a partner with KPMG and resides at 505 Reston Mill Lane, SE, Marietta, Cobb County, Georgia  30067 and may be served at that address  Eischeid is a citizen of Georgia and subject to the jurisdiction of this

2

Court

4      Defendant Sidley Austin Brown & Wood, LLP, ("SAB&W"), formerly known as Brown & Wood, LLP, with its principal place of business in New York City and a practice that is now national and international in scope  SAB&W was an integral member of the scheme to design and sell illegal tax shelter products in return for huge fees, as described hereinafter  SAB&W was a co-conspirator with other defendants with respect to the wrongful conduct at issue  As a result, the financial business in Georgia during the period implicated by this complaint  SAW&B may be served at its New York Office located at 787 Seventh Avenue, New York, New York  100'9

5      Defendant J R Ruble is a former partner of SAW&B, was a co-conspirator with the other defendants and conducted business within the state of Georgia and is subject to the jurisdiction of this Court.

6      Defendant Presidio Growth, LLC ("Presidio Growth"), is a Delaware limited liability company  Presidio Growth acted as an investment advisor in regard to the tax shelters described in this complaint and conspired with the other defendants, thereby subjecting itself to the jurisdiction of the Court  Presidio Growth can be served at its corporate office located at 333 Hayes Street, Suite 200, San Francisco, California  94102

7      Presidio Advisors Services, LLC (Presidio Advisors") is and was a co-conspirator with other defendants with respect to the wrongful conduct described in this complaint  Presidio Advisors acted as a co-promoter and co-designer of the BLIPS tax shelter described herein, and in

3

Systems, 111 Eighth Avenue, New York, New York 10011

11   Defendant Deutsche Bank Securities, Inc , d/b/a Deutsche Bank Alex Brown ("DB Alex Brown"), is a Delaware corporation with its principal place of business at 31 West 52nd Street, New York, New York 10019  Deutsche Bank Securities, Inc  is a members of the New York Stock Exchange. DB Alex Brown is continuously and systematically engaged in business n the State of Georgia, as further described herein, and thus may be found in the State of Georgia, and has agents doing business in the State of Georgia. DB Alex Brown may be served with process by serving its registered agent CT Corporation System, 111 Eighth Avenue, New York, New York 10011 Deutsche Bank AG and DB Alex Brown are sometimes collectively referred to as the "Deutsche Defendants "

12   Each of the defendants are subject to the jurisdiction of this Court and this Court has jurisdiction over the subject matter of this action

13   Venue is proper in this Court in that, among other things, defendant KPMG has its office and registered agent in Fulton County, Goergia.

### STATEMENT OF FACTS

14   The plaintiffs in this case are members of the Keeter family, none of whom possess sophisticated knowledge about tax matters, including tax law and tax shelters   Rather, plaintiffs detrimentally relied on the defendants in connection with this ill-fated decision to implement abusive tax shelters that the defendants fraudulently marketed and promoted as legal tax avoidance products

5

15      The defendants in this case conspired to develop, promote and market illegal and abusive tax shelter products to hundreds of unsuspecting clients, including the plaintiffs  The defendants promoted a variety of different so-called "tax strategies," which they referred to internally and among each other as "products," including the Foreign Leveraged Investment Program, which the defendants referred to by the acronym "FLIP," the Offshore Portfolio Investment Strategy, referred to as "OPIS, and the Bond Linked Issue Premium Structure, referred to as "BLIPS "  Plaintiffs were sold the BLIPS tax products, which the defendants marketed to him as lawful tax avoidance strategies  In reality, as known by each of the defendants, BLIPS were illegal and abusive tax shelters designed to "create" a paper capital loss to offset a real capital gain according to a process that involved, in the words of KPMG tax specialist Bob Simon, in a February 23, 1998 internal KPMG memo that referred specifically to FLIP, but applies equally to BLIPS, "pre-wired" deals  By definition, the "pre-wired" nature of these deals made them illegal and abusive when used to avoid taxes

16      The defendants traded on their national reputations and positions of trust with the Keeter plaintiffs to fraudulently induce the plaintiffs into unwittingly investing in illegal and abusive tax shelters that have caused them substantial money damages and untold emotional strain and public embarrassment

17      The facts behind the scheme alleged in this Complaint have come to light, in part, as a result of an investigation that has been conducted by the Permanent Subcommittee on

6

to BLIPS' approval for sale are troubling and revealing for a number of reasons  First, they show that senior KPMG tax professionals knew the proposed tax product, BLIPS, was 'clearly one that the IRS would view as falling squarely within the tax shelter orbit '  Second, they show how important 'speed to market' was as a factor in the review and approval process  Third, they show the interpersonal dynamics that, in this case, led KPMG's key technical tax expert to reluctantly agree to approve a tax product that he did not support or want to be associated with, in response to the pressure exerted by senior Tax Services professionals to approve the product for sale "
(Subcommittee Report, Ex  A at pp  40-41)

     25    As described in the Subcommittee Report

> Internal KPMG emails reveal an extended, unresolved debate among WNT [KPMG's Washington National Tax Practice] and DPP [KPMG's Department of Practice and Professionalism] tax professionals over whether BLIPS met the technical requirements of federal law, a debate which continued even after the BLIPS was approved for sale  Several outside firms were also involved in BLIPS' development including Sidley Austin Brown & Wood, a law firm, and Presidio Advisory Services, an investment advisory firm run by two former KPMG partners

(Subcommittee Report, Ex  A at p. 35 )

     26    The Subcommittee Report further details the prolonged unresolved KPMG internal debate about whether KPMG could issue a "more likely than not" opinion letter for LIPS that took place via KPMG emails  More than one KPMG tax specialist opined that KPMG could *not* issue such an opinion, i e , that it was not "more likely than not" that BLIPS would withstand IRS scrutiny

9

in the event of an audit  The debate culminated in a shocking and lengthy email sent by the head of

WNT to eight senior KPMG tax professionals, including the Tax Services Practices head and the

DPP head

> Many people have worked long and hard to craft a tax opinion in the
> BLIPS transaction that satisfies the more likely than not standard  I
> believed that we in WNT had completed our work a month ago when
> we forwarded the [draft] opinion to Larry  .
>
> [T]his is a classic transaction where we can labor over the technical
> concerns, but the ultimate resolution – if challenged by the IRS – will
> be based on the facts (or lack thereof)  *In short, our opinion is only
> as good as the factual representations that it is based upon .*     The
> real 'rubber meets the road' will happen when the transaction is sold
> to investors, what the investors' actual motive for investing the
> transaction is and how the transaction actually unfolds       Third,
> our reputation will be used to market the transaction  This is a given
> in these types of deals  Thus, we need to be concerned about who we
> are getting in bed with here  In particular, do we believe that Presidio
> has the integrity to sell the deal on the facts and representations that
> we have written our opinion on?!
>
> Having said all of the above, I do believe the time has come *to shit
> and get off the pot*  The business decisions to me are primarily two
> (1) Have we drafted the opinion with the appropriate limiting bells
> and whistles       and (2) *Are we being paid enough to offset the
> risks of potential litigation resulting from the transaction?* .. My
> own recommendation is that we should be paid a lot of money
> here for our opinion *since the transaction is clearly one that the
> IRS would view as falling squarely within the tax shelter orbit . . .*
> "

(Subcommittee Report, Ex  A at 39 and note 99) (emphasis added)  The Tax Services operations

head responded to the email later the same day  "**I think it's shit OR get off the pot.** *I vote for*

10

letters that plaintiffs had to execute for both FLIP and BLIPS, were just a necessary step in the paperwork   In fact, these representations were drafted and designed by the defendants as one more 'pre-wired" step in their generic tax shelters

## FIRST CLAIM FOR RELIEF

### (Action for Damages Caused from Civil Conspiracy and

### Facilitation of Fraud – All Defendants)

30      The foregoing paragraphs are realleged

31      Defendants have engaged in a civil conspiracy consisting of (1) an agreement between and among them, (2) to misrepresent to plaintiffs the true nature of the tax products described herein and to defraud plaintiffs into paying large fees for worthless products, as determined by the IRS, all of which agreement resulted in injury to plaintiffs and culminated in the preparation and filing of false tax returns in 1999 and 2000   Examples of the overt acts committed by defendants are reflected in this First Claim for Relief and are further detailed in this Complaint   Such detailed allegations of acts committed in furtherance of this conspiracy are incorporated into this claim for relief

32      On information and belief, prior to the marketing and sale of their tax products to plaintiffs, defendants entered into an agreement, association and union associated-in-fact to devise, design, facilitate, promote, and sell their tax products to plaintiffs and other individuals throughout the United States for the express purpose of generating and sharing in millions of dollars in fees   The receipt of those fees was the sole motive of the defendants in the development, design,

12

promotion, and execution of the scheme  Upon information and belief, many of the fees charged and received by defendants were undisclosed to plaintiffs, and represent yet another aspect of defendants' deceptive and unlawful conduct

33      The receipt of substantial fees and the pecuniary gain from those fees was the sole motive for the defendants' conduct  The providing of professional services to clients, if done at all, was merely an incidental by-product of and was not a motivating factor for defendants' conduct alleged herein  Defendants' conspiracy gave each of the participating defendants a pecuniary interest in the advice and professional services they would render, allowed the other defendants to direct and regulate their professional judgment, and impaired the exercise of that judgment and the duty of care, loyalty and honesty each of the aforementioned defendants owed to the plaintiff and their other clients

34      The IRS has concluded that are illegal, "abusive" tax shelters

35      Defendants' wrongful behavior caused damage to plaintiffs and other clients of KPMG, the Deutsche Bank defendants, the Presidio Defendants, SAB&W, Eischeid, Ruble and Larson who were defrauded by *interalia*  (1) defendants' failure to disclose the substantial risks involved in the BLIPS product, (2) defendants' assurances that BLIPS product were legitimate tax avoidance strategies, (3) defendants' failure to advise plaintiffs that BLIPS were not registered as tax shelters even though they were required to be  (4) defendants' failure to provide advice about lawful tax planning and investment alternatives, which plaintiffs would have pursued had plaintiffs

13

.

known that BLIPS were illegal, unregistered tax shelter

36      As described throughout this Complaint, defendants' conspiracy was perpetrated by, as alleged herein, willfully defrauding clients such as plaintiffs, and by misrepresenting material facts and failing to disclose material risks   Had it not been for those willful and intentional misrepresentations, plaintiffs would not have participated in BLIPS  Avoiding participation in these arrangement would have saved plaintiffs' multi-million dollar transaction fees, and avoided tax interest and applicable penalties  Plaintiffs also would have been able to pursue more reasonable and legitimate tax planning  The conduct of defendants was the direct and immediate cause of plaintiffs misinformed decisions to invest his money in their illegal and abusive tax shelters

37      The collaboration, participation, and overt acts of defendants in the civil conspiracy was undertaken in an effort to induce plaintiffs and others to invest in the transactions and, in turn, to generate large fees to defendants  Defendants wrongfully solicited and encouraged plaintiffs and other clients into unknowingly investing in abusive tax shelters without disclosing the unacceptable risks involved

38      Defendants knew or should have known the investment tax strategy was an abusive tax shelter  Defendants knowingly or recklessly made false representations to plaintiffs concerning the viability and *bona fides* of BLIPS and knowingly or recklessly caused to be issued incorrect and false tax opinions concerning BLIPS

39      As a result of defendants' concerted conduct, plaintiffs paid unnecessary fees related

14

to BLIPS, have incurred costs and may incur additional costs in connection with the IRS audit, on account of BLIPS, each and all of which constitute actual damages suffered by plaintiffs Defendants' concerted conduct has, moreover, proximately caused this and other damages to plaintiffs, which exceed $10,000,000 Plaintiffs are informed and believe that defendants' conduct was intentional, willful and wanton Therefore, plaintiffs are entitled to recover punitive damages

## SECOND CLAIM FOR RELIEF

### (Fraud Against All Defendants)

40    The foregoing allegations are realleged

41    In their communications with plaintiffs, defendants (through their agents and representatives), acting in concert with one another, made numerous intentional misrepresentations and engaged in numerous material omissions in marketing, establishing and receiving funds for BLIPS   The defendants' representations were known to be false and/or omissive when made, or were made with reckless disregard for their falsity   Such misrepresentations and material omissions were unlawful and constituted overt acts in furtherance of a conspiracy to defraud,

42    As a result of plaintiffs' reliance on the defendants' false statements, plaintiffs have been damaged in an amount in excess fo 10,000,000, as heretofore alleged, said amount to be shown at the trial of this action   Plaintiffs allege that defendants' misrepresentations and concealments of material facts were intentional, willful and wanton.   Therefor plaintiffs are entitled to recover punitive damages from defendants

15